JOHN PTACEK *et al.* Appellants, *vs.* JOSEFINA PISA *et al.* Appellees.

*Opinion filed December 17, 1907.*

1. BENEFIT SOCIETIES—*effect where contract to support, in consideration of being named beneficiary, is violated.* One who agrees to provide a home for and support a member of a benefit society as long as he lives or as long as he wishes to stay, in consideration of being named as beneficiary in the member's certificate, violates his contract if he permits the member to be sent to the poor-house against his will; and in such case the member's obligation is terminated and he has a right to name a new beneficiary, who will take free from any claims of the former beneficiary.

2. SAME—*fact that contract is harder to perform than was expected does not excuse its breach.* The fact that a contract to care for and support a member of a benefit society proves harder than was expected, owing to the member's ill-health, does not excuse the beneficiary named in the certificate, in consideration of such agreement, from performing the same; nor can he, after he breaks the contract, obtain re-imbursement for board of the member on a *quantum meruit* basis.

3. SAME—*when beneficiary is not legally entitled to have assessments and dues paid by him refunded.* A beneficiary named in the certificate, in consideration of his agreement to pay the dues and assessments and care for and support the member, is not legally entitled to have dues and assessments paid by him refunded after he has repudiated his contract; but in the absence of any cross-error questioning the trial court's allowance thereof a court of review cannot change the decree in that respect.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

On February 9, 1895, Josef Pisa became a member of one of the subordinate lodges of the Bohemian Slavonian Knights and Ladies, a fraternal benefit society organized under the laws of Illinois, and took out a benefit certificate payable at his death to his wife, appellee Josefina Pisa. In 1900 Josef Pisa took out a new certificate payable to appellants, and at about the same time Josef and his wife were taken into the home of appellants and furnished board and lodging. John Ptacek is the son of Josefina Pisa by her first marriage and was the step-son of Josef Pisa. Josef Pisa was in arrears for his dues and assessments to said society, and it was a part of the arrangement that appellants were to pay these and all future dues. At the same time the certificate was taken out in appellants' favor it appears from this record that Josefina Pisa, who had a certificate in the same society for $1000, assigned her certificate to appellants, with the understanding that they should keep up her dues and assessments. The two Pisas remained in appellants' home from May 21, 1900, until March 16, 1905, when Josef Pisa was taken to the poor-house at Dunning. Josefina remained a month longer and then left, and has not lived with appellants since. In June, 1905, after Josef Pisa was taken to the poor-house, his wife testifies that at his request she made a demand on appellants for the surrender of the certificate issued to them, which was refused. Appellants deny that such demand was made. Thereafter Josef Pisa requested that the benefit society issue a new certificate in favor of his wife. On September 19, 1905, Josef Pisa died, being in good standing in the society, his dues and assessments having been paid by appellants, though Josefina testified that after the new certificate was issued to her in June,

1905, she went to the society to pay the assessments and found they had been previously paid by her son. Appellants claimed that they knew nothing of any change of beneficiaries and that they were entitled to the $1000 named in the second certificate. The benefit society filed a bill of interpleader acknowledging its obligation to pay the $1000, and brought the same into court to be paid to whomsoever it was found to be due.

The superior court in its decree found that appellants were not members of Pisa's family at his death; were not heirs, blood relations, or otherwise in the class designated in the statute under which the society existed; that the consideration alleged by appellants for being designated by Pisa as beneficiaries was vague, indefinite and uncertain; that the $1000 was payable to Josefina Pisa, but that appellants were entitled to be reimbursed for the dues and assessments paid by them, and interest thereon, amounting to $130, and that all the funeral expenses and $50 solicitor's fees should be deducted from the fund, after which deductions the balance, $695.25, was directed to be paid to Josefina Pisa. The Appellate Court affirmed the decree of the superior court, and a certificate of importance having been granted, an appeal was then taken to this court.

CHARLES D. LUSK, (DEWITT C. JONES, of counsel,) for appellants.

CHARLES A. CHURAN, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Manifestly, if any contract was made in May, 1900, when Josefina Pisa and her late husband were taken into the home of appellants, its provisions were that said society issue to appellants certificates for both $1000 policies upon the life of Josef and of Josefina Pisa, respectively, and that

appellants should care for and support both of the old people while they lived. It is true, Marie Ptacek testified, on cross-examination, that the agreement was that Josef and Josefina Pisa should stay there as long as they wished and not so long as they lived, but the great weight of the testimony is clearly to the effect that they were to be kept as long as they lived, and this testimony is consistent with all the surrounding facts and circumstances shown by the record. It is true, also, that appellants claim Josef and his wife were satisfied with his removal to the poor-house; but this is denied by Josefina, and the action of Josef in having a certificate taken out in favor of his wife after his removal to the poor-house shows conclusively what he understood the agreement to have been. Appellants testified that Josef Pisa was taken to the poor-house because it was impossible to care for him at home on account of his physical condition; that because of paralysis, or some other reason, he was not able to control the excretal organs. Whether the agreement was that Pisa should stay with the appellants as long as he wished or as long as he lived, in either event he was taken to the poor-house against his wishes and his stay terminated contrary to the agreement under either construction, so that the contract, be it held one way or the other, was broken by appellants. The fact that they found it more difficult to care for him than they anticipated did not justify appellants in violating their contract. Mere hardship or difficulty will not excuse a party from carrying out a contract, and where one contracts to do any act which is possible he is liable for a breach, even though circumstances arise, without his fault, making it difficult or even impossible for him to perform. (*Walker* v. *Tucker,* 70 Ill. 527; *Ballance* v. *Vanuxem,* 191 id. 319; *Lake Shore and Michigan Southern Railway Co.* v. *Richards,* 152 id. 59.) The breach of this contract by appellants relieved the other parties from performance on their part. (7 Am. & Eng. Ency. of Law,—2d ed.—p. 150, and cases there cited.)

Without discussing the evidence as to whether the appellants violated their contract previously, there can be no question that the contract to care for Josef was violated in both the spirit and letter when they took him to the county poor-house. If they had any contract it was to care for Josef and his wife during life. They now claim they were entitled to recover for the board of both of them at what it was actually worth while they remained in their home, some four years and ten months. They do not claim, however, that there was any agreement, conditional or otherwise, for any set amount for board. Their agreement was, that if they were made beneficiaries under the policies they should support and care for the old people as long as the latter lived, whether it was one or ten years; and even though they found it difficult, they cannot repudiate that contract, as they did, by sending the step-father to the poor-house and then set up a new contract charging for board on a *quantum meruit* basis. Neither can the courts make such a new contract for them. Where the meaning of a contract is plain, another meaning cannot be added by implication or intendment. *Diederich* v. *Rose,* 228 Ill. 610.

Even though the law justified a contract such as is claimed to have been made between appellants and Josef Pisa at the time they took him into their home, after the breach of this contract by appellants Josef was justified, under the law, in having a new certificate made out in favor of his wife. In *McGrew* v. *McGrew,* 190 Ill. 604, we said (p. 607): "The law is well settled in this State that a member of a fraternal beneficiary society, where no intervening rights have attached, may at his pleasure surrender his benefit certificate and have a new certificate issued and designate therein a new beneficiary, and that a beneficiary has no vested rights in the certificate during the life of the member by reason of the fact that he has been named as a beneficiary in such certificate." See, also, *Murphy* v. *Nowak,* 223 Ill. 301.

Appellants claim that while a certificate such as the one here in question is not assignable at law, still all beneficial interest therein may be transferred in equity, and that such equitable rights may be enforced in a court of equity. This doctrine is upheld in *Royal Arcanum* v. *Tracy,* 169 Ill. 123, *McGrew* v. *McGrew, supra,* and *Jarvis* v. *Binkley,* 206 Ill. 541; also in Bacon on Benefit Societies, sec. 306*a, Kimball* v. *Lester,* 43 App. Div. (N. Y.) 27, and *Smith* v. *N. B. Society,* 123 N. Y. 85.

Appellees claim that the doctrine laid down in those decisions just cited from this State is not the law here now, because the statute as to mutual benefit societies has been changed since the majority of these decisions were rendered. We do not agree with this contention. But, regardless of this doctrine of equitable lien, appellants lost the right to invoke it when they repudiated their contract. This being so, it is not necessary to pass upon the question whether the consideration was too vague, indefinite and uncertain to support the contract. The only justification for the trial court allowing the dues and assessments paid by appellants (with interest thereon) being re-paid to them out of the fund, must be based on this doctrine of equitable lien. Obviously, having violated their contract, appellants are not legally entitled to have this money refunded to them, but as no cross-errors are assigned by appellees and no claim of this character is made, this court cannot change the decree in that regard.

In view of our conclusions on the points already considered it is unnecessary for us to decide whether the step-son, John Ptacek, was a member of the family of Josef Pisa, or to discuss and decide the other questions in the briefs that have not been passed upon in the opinion.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*