Antonina Kiolbassa, Appellant, v. The Polish Roman Catholic Union of America, a corporation, et al., Appellees.

## Gen. No. 14,012.

1. FRATERNAL BENEFIT SOCIETIES—*what interest in certificate enforceable in equity.* A benefit certificate issued to one who may be lawfully named as beneficiary will be enforced in equity in favor of such beneficiary notwithstanding an attempted change by the members, if it appears that such beneficiary has made a loan to such member upon the faith of such certificate.

2. FRATERNAL BENEFIT SOCIETIES—*when change of beneficiary effected.* Held, under the evidence in this case, that a change of beneficiaries had been duly effected, notwithstanding the old certificate was not surrendered as provided by the by-laws, it appearing that such old certificate had been lost or misplaced and a written request for a new certificate made.

3.  EVIDENCE—*what testimony of wife incompetent.* A wife is not permitted to testify to conversations between herself and her husband where the interests of a third party are involved.

Bill of interpleader. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed May 19, 1908.

**Statement by the Court.** March 7, 1906, The Polish Roman Catholic Union of America, a fraternal insurance society, filed its bill of interpleader in the Superior Court, making Antonina Kiolbassa, appellant, and Kosciol Sw. Stanislawa Kostki, parties defendant, and praying that they be required to interplead as to their conflicting claims for the amount due from complainant under certain certificates of membership issued during his life time to one Peter Kiolbassa, a deceased member.

Both of the defendants filed answers to the bill, and complainant filed its replications to such answers.

The usual order for the defendants to interplead was entered. Complainant deposited with the clerk of the court the amount, $750, claimed under the certificates, and was dismissed out of court with its costs.

Appellant amended her answer by alleging a loan of $1,000 made by her to said Peter Kiolbassa and the delivery by him to her of a certificate issued by the complainant, dated March 23, 1904, numbered 181, for $750, payable to her upon the death of said Peter Kiolbassa, as part security for the loan; and that if a certificate was issued by complainant under date of June 15, 1905, designating defendant, Kosciol Sw. Stanislawa Kostki, a beneficiary she had no knowledge thereof, except from the bill, and that such certificate, if any, was not issued in accordance with the statute, and laws of said society, and was void and of no effect.

On the hearing before the learned chancellor a decree was entered sustaining the validity of the June

15, 1905, certificate, and ordering the payment by the clerk to said Kosciol Sw. Stanislawa Kostki of the sum of $450, and to the appellant the sum of $300, less complainant's costs, taxed at $63.50. This appeal is prosecuted from the decree.

JOSEPH A. CASEY, for appellant.

N. L. PIOTROWSKI, for appellee; JOHN F. MAHON, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

The beneficiary certificates shown in the record contain the usual provisions in such certificates to the effect that the member must comply in the future with the constitution, laws, rules and regulations governing said Union and its funds, at the time the certificate was issued, and that might thereafter be enacted by the Union, and that such rules, regulations and laws are made a part of the certificate; and particularly, that any benefit to be paid thereunder or any beneficiary named therein might be revoked, altered or changed, and substitution had at the request in writing of the acceptor of the certificate. Such request was to be made in accordance with the laws of the Union then in effect and governing the manner and form thereof, and such change must be approved by the proper officers of the Union before becoming effective.

Chapter 3, section 199, of the constitution and bylaws of the Union provides:

"Any member holding a beneficiary certificate desiring at any time to make a new direction as to its payment may do so by authorizing such change in writing on the back of the certificate in the form prescribed, attested by the secretary, with the seal of the society attached, and by the payment to the general secretary of the sum of 50 cents. But no change of direction shall be valid or have any binding force

or effect until such change shall have been reported to the general secretary, the old certificate, if possible, filed with him, the change approved by the Executive Council and the new beneficiary certificate issued and said new certificate shall be numbered the same as the old certificate and be endorsed as having been issued upon the surrender of the old certificate, and all other formalities provided for upon the issuance of an original certificate shall be complied with upon the issuance of a changed, altered or new certificate, provided should it be impracticable for the recording secretary to witness the change desired by the member, attestation may be made by a notary public or an officer of the court of record, seal to be attached in attestation.''

Section 200 of the constitution and laws of the Union is as follows: ''Parol evidence of a member's intention or desire to change his beneficiary must be disregarded.''

Section 201 provides:

''In case a benefit certificate is lost or beyond a member's control the member may in writing surrender all claim thereto and .direct that a new certificate be issued to him payable to the same or a new beneficiary or beneficiaries in accordance with the laws of the Union upon making affidavit of the facts in the case and upon the approval of the same by the society, and such facts being satisfactory to the Executive Council and paying a fee of 50 cents.''

The record shows that on or about June 15, 1905, Peter Kiolbassa signed the following document of that date, addressed to the general secretary of the Union:

''DEAR SIR:

I, the undersigned, ask to have the certificate wherein my wife, Antonina Kiolbassa, is the beneficiary for the sum of Seven Hundred and Fifty ($750.00) Dollars, issued to me by said Union cancelled and made null and void, and direct that a new one be issued to me for the same amount, as follows: To Antonina Kiolbassa, my wife, the sum of Three Hundred ($300.00) Dollars,.and to the Church of Sw. Stanis-

Kiolbassa v. Polish Roman Catholic Union.

lawa Kostki, Chicago, Illinois, the sum of Four Hundred Fifty ($450.00) Dollars, hereby revoking and cancelling all other certificates issued to me prior to above date by the Polish Roman Catholic Union of America.

Signed in presence

PETER KIOLBASSA."

On that date the Union issued a new certificate to Peter Kiolbassa wherein appellant, his wife, was made a beneficiary for $300, and appellee Kosciol Sw. Stanislawa Kostki, Chicago, Ill., was made a beneficiary for $450.

It is conceded that the complainant Union was formed to include in its membership only the membership of the Roman Catholic Church. Under the amendment of the statutes relating to Fraternal Insurance Associations made in 1901, benefits might be made payable to religious or charitable institutions. No question, therefore, of want of authority under the statute, and by-laws of the Union, to make appellee a beneficiary in the certificate is raised by the record or presented for consideration.

The claim of appellant to the entire fund of $750 named in the certificate No. 181 issued March 23, 1904, is based upon an alleged loan of $1,000 which she testifies she made to her husband about the date of the certificate, upon his promise to have his life insured for $1,000 for her benefit. She testifies that she gave him the money which he used for his own separate use, and that he thereafter handed her the certificate of March 23, 1904, for $750 in which she was the sole beneficiary; that she accepted the certificate as security for the repayment of the money loaned to him, and that it has remained in her possession from its delivery to her. No part of the sum loaned by her to her husband has ever been repaid to her.

Appellant also testifies that about two weeks before her husband's death, she went to his bedside in company with Theresa Gorski, a young lady who lived in

the same building, and that her husband drew from under the pillow of his bed an unexecuted policy and a written request for a change of beneficiary, and told her that the Rev. Andrew Spetz and Frank Kwasigiock had left the papers for him to sign and that he had refused. He also said to her that the money which would come in the event of his death, as the proceeds of the certificate of March 23, 1904, belonged to her, and was little enough; that he owed her a great deal more, and asked her where the certificate was, and upon being informed, he told her to take the unexecuted papers and carefully preserve them with her certificate.

Theresa Gorski substantially corroborates in her testimony appellant's account of the bedside conversation between appellant and her husband.

Appellant contends upon this testimony that Kiolbassa pledged and transferred equitable rights in the certificate as security for the loan made by her to appellant, which will be enforced in equity; and that appellee, designated as a beneficiary in the new certificate, a mere volunteer, having parted with no consideration, will not be protected in equity, as against appellant, the beneficiary in the original certificate who has a vested equitable interest therein.

It cannot be questioned successfully that if appellant's contention as to the facts is established by the evidence her equitable rights may be enforced in equity. Ptacek v. Pisa, 231 Ill. 522. If the evidence shows that appellant made the loan to her husband, as testified to by her, and the original certificate was taken payable to her as security therefor, and the loan was never paid, appellant has equitable rights in the certificate and the proceeds thereof which a court of equity ought to enforce.

It appears from the evidence in the record that the only testimony tending to show a loan from appellant to her husband, and that he procured the certificate in question to be issued to him payable to her, as se-

curity for the loan, in pursuance of an agreement with appellant to that effect, is the testimony of appellant as to certain conversations between herself and her husband. No evidence in writing of the agreement is shown in the record. Objection was made by appellee to the testimony of appellant to the conversations, and appellee now insists that her evidence as to such conversations was not competent under the proviso in section 5, chapter 51, of the Revised Statutes.

In our opinion, appellant was not a competent witness to testify to the conversations detailed in her testimony, and her testimony on that subject must be disregarded.

The theory and the facts set up in appellant's answer and testified to by her are contradicted and proven to be untrue by the facts and circumstances shown by the evidence offered in behalf of appellee. It appears that the deceased, Kiolbassa, was a member of the complainant society from its organization, and that he was at one time prior to the taking out of the certificate dated March 23, 1904, payable to appellant, the general president of complainant; that he had held from the organization of the society a certificate for the same sum of money payable to Paulina Kiolbassa, his first wife, and after her death and his marriage to appellant, he caused his certificate to be changed and made to appellant. The Rev. Father Spetz and Frank Kwasigiock both flatly deny that they left the papers—an unexecuted certificate and a request for a change of beneficiary—with Kiolbassa. And Theodore Ostrowski, treasurer of the complainant, gives in detail a conversation with Kiolbassa in which the latter expressed his wish to have a change made in his certificate; and that the papers were prepared by the witness and were left with Kiolbassa by the witness. He further testified that new papers were prepared, and he left them with Kiolbassa's physician in the hospital to which he had been removed.

It appears from the evidence that Kiolbassa in a

conversation with the president of the complainant Union expressed his intention to change his certificate so that it should be made payable $300 to his wife, and $450 to St. Stanislaus Church, and thereupon the president of the Union instructed the secretary to prepare the papers accordingly.

In our opinion the evidence shows that the change in the certificate was made at Kiolbassa's request, and disproves any theory of fraud upon appellant, or undue influence upon the deceased, to change the designation of the beneficiary in his certificate in favor of the appellee.

We think the conclusion is warranted from the evidence that no vested rights in the certificate dated March 23, 1904, or the proceeds thereof, existed in favor of appellant when Kiolbassa caused a new certificate to be issued changing the beneficiaries as therein stated.

As to the apparent irregularity in issuing the new certificate without requiring a surrender of the existing certificate as provided in the by-laws of the Union, the evidence shows that the deceased made search for the certificate in his desk where he supposed it was, and that he failed to find it. Supposing it to be misplaced or lost, he then signed the written request for a new certificate shown in the record. Niblack on Benefit Societies and Accident Ins. (2nd ed.), sec. 222; Martin v. Stubbings, 126 Ill. 387.

The evidence, we think, supports the decree, and the decree is affirmed.

*Affirmed.*