Great Lakes Dredge & Dock Company, Appellant, v.
City of Chicago, Appellee.

Gen. No. 35,409.

Opinion filed June 15, 1932.

Cooke, Sullivan & Ricks, for appellant; George A. Cooke, Oliver R. Barrett and Edward H. Fiedler, of counsel.

William H. Sexton, Corporation Counsel, for appellee; Martin H. Foss and Carl J. Appell, Assistant Corporation Counsel, of counsel.

Mr. Presiding Justice Hebel delivered the opinion of the court.

This is an action of assumpsit brought by the plaintiff to recover from the defendant the sum of $150,000 for labor and material furnished by the plaintiff to the defendant in the year 1929, in order to complete the work of straightening the south branch of the Chicago River. A jury was waived and the case was tried by the court. Written propositions of law were submitted to the court by the plaintiff and refused. The court found for the defendant and entered a judgment against the plaintiff. From this judgment the plaintiff appeals.

It appears, in substance, from the facts in evidence, that on July 8, 1926, the city council of Chicago adopted the so-called River Straightening Ordinance, which provided for altering and straightening the south branch of the Chicago River between Polk street on the north and West Eighteenth street on the south, and for making certain property adjustments with the railroads and other property owners in the vicinity. Photographs showing the old and the new channel are in evidence. The project was a part of the Burnham plan and its purpose was to permit the opening of new streets in the city, as well as to aid navigation on the river.

The ordinance authorized the commissioner of public works of the city to make any and all contracts necessary for carrying out the improvement and all

the work was to be done under his supervision and control.

Pursuant to the authority granted by this ordinance the commissioner of public works entered into the original contract of August 18, 1928, with plaintiff for excavation of the new channel, construction of dock walls, etc., and filling of the old channel. The contract provided for payments to plaintiff for all the work covered thereby at the unit prices fixed therein.

The contract was not what is known as a lump sum contract. The total cost of the work depended upon the quantity actually to be required of the several items of labor and material at the unit prices for each item. The estimated cost of the entire project on that basis was about $2,770,000.

The original contract of August 18, 1928, provided for completion of the new channel within 10 working months and "working months" were stated to include the period "between April 15th and November 15th of any calendar year." Plaintiff proceeded promptly with the work under the contract and by May 28, 1929, had excavated the new channel and had driven substantially all the round piles for about 5,000 lineal feet of the dock, from the extreme north end of the location of the new channel to the new bridge-crossing of the Baltimore and Ohio Railroad, at which point the dredging of the new channel had been stopped until such time as the contractor should be permitted access by the railroad.

Meanwhile high water in Lake Michigan and the Chicago River had made itself manifest.

By May 1929, plaintiff had completed the driving of the round piles for the 5,000 lineal feet of dock walls. This work could be done notwithstanding the high water level since the piles were driven from on top by equipment resting on the water surface.

Plaintiff attempted at first to fight the high water condition and to continue with the work. It employed

divers at a large cost in an attempt to do the work. Before seeking relief from this condition, in the manner provided by the contract, plaintiff expended $20,000 in attempting to cope with the high water condition, and to continue the work. No part of this amount is included in the amount sued for.

On July 2, 1929, plaintiff in response to a request from the commissioner of public works for further information as to the status of the project, wrote to the city in some detail showing that the work up to that time was ahead of the time schedule provided by the contract and more than half the work necessary to open the new channel to navigation had been completed. In this letter plaintiff again discussed the high water condition and the impossibility of continuing the work in the manner required by the contract, referred to the city's plan for constructing cofferdams and suggested a meeting on July 9 at the site of the work.

On July 18, a conference was held in the office of the commissioner of public works, between the commissioner, Richard W. Wolfe, Loran D. Gayton, the city engineer, and John F. Cushing, president of the plaintiff company. The commissioner at first requested that the company do the additional work of cofferdamming without expense to the city, but the company refused to do this work at its own expense.

Mr. Wolfe then asked Mr. Cushing whether plaintiff would agree to construct the cofferdams and flumes at the unit prices fixed in item "O" of the contract but at a maximum cost to the city of $150,000 and Mr. Cushing replied that if Mr. Wolfe would give the plaintiff the order to proceed immediately he would agree to that price. Mr. Wolfe agreed to this, directed Mr. Cushing to proceed immediately with the work, promised to send Mr. Cushing a written order to do the work and instructed the city engineer to prepare such an order for his, Mr. Wolfe's, signature.

Immediately after the conference of July 18, plaintiff proceeded to assemble the materials and to construct the cofferdams and flumes, thus permitting resumption of the work on the dock walls, including the concrete caps. The dock walls were completed in the latter part of November, 1929.

The cofferdams and flumes formed no part of the structure of the dock walls provided for by the main contract, but were employed for the purpose of permitting the dock walls to be constructed in accordance with the plans and specifications. After the dock walls, including the concrete caps, etc., had been completed (late in November, 1929) the cofferdams and flumes were removed.

The dock wall portion of the work was completed in the latter part of November, 1929. Plaintiff requested payment for the cofferdams and flumes but Mr. Wolfe replied that, as he understood it, he could not pay the money until he received an order from the city council. Shortly before this suit was started, plaintiff again requested payment for the work and stated that unless it was paid, suit would be started, to which Mr. Wolfe replied that he did not see how he could pay the $150,000 and that he would not blame plaintiff for starting suit. Plaintiff has not been paid any part of the cost of this work.

It is suggested by the plaintiff that the general contract did not require the plaintiff to construct cofferdams and flumes at its own expense. The contract is not for a fixed amount, but provides that the amount of money to be paid by the City of Chicago depends upon the quantity of work performed, and this quantity is to be multiplied by a unit price, and constitutes the price for the item. The plaintiff company did perform all the work required by certain items designated A to N, and received pay therefor. In none of the items A to N was there a provision for the con-

struction of cofferdams or flumes. However, the contract specifically provides that the plaintiff was not to receive payment for extra or additional work or materials furnished at additional expense, unless the additional outlay be specifically authorized by the city council of the City of Chicago, and ordered in writing signed by the commissioner of public works. This provision is a part of the contract and expressly limits the power of the commissioner of public works to act. The provision of the contract applicable to the question is as follows:

"The right is reserved to the City of Chicago, through its commissioner of public works, to make alterations in the plans or specifications for the work included herein. Should it become proper or necessary, however, in the execution of the work, to make any alterations which will increase the expense, said commissioner of public works shall report to the city council the nature of such alterations and his estimate of the amount by which the expense to the city should be thereby increased. The amount by which the contract price shall be increased in consequence of such alterations shall be determined by the city council.

"It is expressly understood and agreed that no payment shall be made to said party of the first part for any extra work or material or of any greater amount of money than is herein stipulated to be paid, unless some changes in or additions to the contract requiring additional outlay by said party of the first part shall first have been expressly authorized by the city council of the City of Chicago and ordered in writing by said commissioner of public works."

This request for extra work and the additional cost was not presented to the city council, and therefore was not expressly authorized. The plaintiff attempted to obtain a written order from the commissioner of public works as authority to do the work, but the com-

missioner refused to give this written order. The parties in the instant case are each bound by the terms of the contract, and are chargeable with the knowledge of its provisions. The commissioner of public works is but the agent of the defendant and the agent's authority is limited by the terms of the contract between the plaintiff and the defendant. This agent cannot waive the provisions of the contract that apply when extra and additional work is to be performed and for which money is to be paid by the defendant, any more than this agent could relieve the plaintiff from its obligation under the terms of the contract, and especially where the defendant is without fault.

The plaintiff contends that the verbal order of the commissioner directing the plaintiff to do the work at the city's expense was sufficient; that a written order was not required if the commissioner of public works had authority to direct the plaintiff to do the work and to bind the city to pay for it, and, in any event, the city has ratified and approved the commissioner's act by the acceptance of the benefits, and therefore is estopped from asserting that the commissioner lacked authority to bind the city.

From the statement of the facts hereinbefore mentioned, the commissioner directed the plaintiff to construct the cofferdams and flumes, for which he was to give a written order, but after the order had been prepared a question was raised by a member of the corporation counsel force as to the commissioner's authority, who advised that the order should be presented to the city council of the City of Chicago for allowance.

The principal ground urged by the plaintiff for the construction of the cofferdams and flumes is that by reason of the high water making it impossible to complete the work it was necessary to build these temporary structures to hold the water back from the area in which the dock walls were to be built. Another

ground urged is that it was never contemplated by the parties at the time of the signing of the contract that the water in the river would rise to a height which would make it difficult to do the work. The plaintiff, no doubt, was familiar with the river conditions and that the height of the water would make it difficult to work. Therefore, if extra work was likely to become necessary because of this condition, the plaintiff should have provided for such contingency in the contract.

In the instant case there was no impossibility of performance of the work by the plaintiff. That is self-evident from the fact that the work was completed after the construction of the cofferdams and flumes. This extra construction to control the water worked a hardship in that the extra cost of the work had to be borne by the plaintiff. Still under the facts and the terms of the contract, there is no liability on the part of the defendant to pay for this extra work. The general rule which applies in the instant case is that if a contractor meets with difficulty of performance, nevertheless that would not relieve the contractor from the contract, nor justify the contractor in demanding more pay because of the difficulty. *Day v. United States,* 245 U. S. 159; *Ptacek v. Pisa,* 231 Ill. 522; *Carnegie Steel Co. v. United States,* 240 U. S. 156, 164; *Globe Refining Co. v. Landa Cotton Oil Co.,* 190 U. S. 540, 543; *United States v. Gleason,* 175 U. S. 588.

The plaintiff contends that it asked for and was entitled to an extension of time within which to complete its work because of water conditions of the river, and in order that the plaintiff might perform and that through negotiations with the commissioner of public works the plaintiff proceeded to do the extra work at a price of $150,000 and save the city $400,000 in interest charges that would accumulate on the bonds of the defendant if the work had been delayed. However, the question of an extension of time within which to

complete the work is not material upon the facts in the record. The question is, Was this extra work authorized by the city council of the City of Chicago?

The remaining question to be considered is, did the City of Chicago ratify and approve the act of the commissioner by accepting the benefits, and is therefore estopped to deny his authority? The record justifies the assumption that the defendant, the City of Chicago, accepted work of a permanent character called for in the contract betwen the parties, which was paid for, and it must be conceded that the cofferdams and flumes were but temporary structures constructed and installed to expedite the work required to be performed by the plaintiff under its contract. As heretofore stated in this opinion, the high water in the river was a difficulty encountered by the plaintiff in the performance of the work, and the expense in the construction and installation of the cofferdams and flumes, in order to do this work, must be borne by the plaintiff. The defendant is not chargeable with conduct such as could be construed as an acceptance of a temporary structure used by the plaintiff in its performance of the work and removed by it upon completion of the work.

This court has considered the propositions of law refused by the trial court, and finds generally that the propositions are in direct conflict with the conclusions reached by us, and therefore were properly refused by the trial court.

There being no error in the record such as would warrant a reversal, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FRIEND and WILSON, JJ., concur.