· ELLIS v. BERRY *et al.*[*]

(Division A.    Oct. 18, 1926.    Suggestion of Error Overruled Nov. 15, 1926.)

[110 So. 211.   Nos, 25510-25515.]

1. EXECUTORS AND ADMINISTRATORS.
   Even if it be necessary that heir be party to contest of claim, it is enough that after administrator files contest heir files one in the cause and takes part in the proceeding.

2. EXECUTORS AND ADMINISTRATORS. *On filing of contest of probated claim, claimant need file no. pleading, in absence of demand*

*or necessity for bill of particulars (Hemingway's Code, section 1776 [Code 1906, section 2108]).*

On filing of contest under Hemingway's Code, section 1776 (Code 1906, section 2108), of claim against estate, which has been properly probated, allowed, and registered, claimant need present no pleadings, unless bill of particulars has been demanded or is necessary from nature of items of claim.

3. EXECUTORS AND ADMINISTRATORS. *Administrator having on contest of probated claim procured filing of unnecessary pleading by claimant over his protest held not entitled on appeal to complain of its form, or claim that it was abandonment of claim.*

Administrator, on filing contest of probated claim, having by order of court, over protest of claimant, procured filing of unnecessary pleading by claimant to make up an issue, may not on appeal complain of form thereof, or claim it to be abandonment of claim.

4. EXECUTORS AND ADMINISTRATORS.

It is proper for claims for services rendered to decedent to be probated.

5. EXECUTORS AND ADMINISTRATORS.

Administrator having waived incompetency, under Hemingway's Code, section 1577, of claimant, as witness to establish his claim, by putting him on stand and examining him, may not complain of testimony elicited.

6. WITNESSES.

Under Hemingway's Code, section 1575, witness is not disqualified because of interest in result.

7. WITNESSES.

Disqualification, under Hemingway's Code, section 1577, of claimant as witness to establish his own claim against decedent's estate, does not disqualify him as witness for other claimants.

8. WITNESSES. *Wife is competent to establish his claim against decedent's estate, though he is incompetent (Hemingway's Code, sections 1576, 1577).*

Wife competent witness for husband, under Hemingway's Code, section 1576, is not incompetent as witness to establish his claim against decedent's estate because he is incompetent therefor under section 1577.

9. FRAUDS, STATUTE OF.

Statute does not apply to claim for services rendered deceased on his promise to compensate claimant therefor by will.

10. LIMITATION OF ACTIONS.

Till death of deceased, limitations does not begin to run against claim for services rendered him on his breached promise to compensate claimant therefor by will.

11. EXECUTORS AND ADMINISTRATORS.

Claim for services rendered deceased by relatives under no moral obligation, on his promise to compensate therefor by will, *held* sustained by evidence.

---

*Corpus Juris-Cyc. References: Executors and Administrators, 24CJ, p. 323, n. 85; p. 398, n. 83; p. 399, n. 93; p. 407; n. 94; p. 415, n. 25, 26; Frauds, Statute of, 27CJ, p. 363, n. 54; Limitations of Actions, 37CJ, p. 821, n. 8; Witnesses, 40Cyc, p. 2256, n. 39; p. 2283, n. 82; p. 2335, n. 91; Applicability of statute of frauds to claims against decedent's estate, see 11 R. C. L. 196; Applicability of statute of limitations to claims against decedent's estate, see 11 R. C. L. 211. As to necessity of expectation of compensation on part of both parties as essential to recovery of claim for services rendered decedent, see 11 R. C. L. 209; 5 R. C. L. Supp. 602.

APPEAL from chancery court of Simpson county.

HON. T. P. DALE, Chancellor.

Contest by H. R. Ellis, administrator of Isaac Bloom, deceased, of probated claims of R. L. Berry and others. From an adverse decree the administrator appeals. Affirmed.

*R. N. & H. B. Miller* and *G. Wood Magee,* for appellant.

Claims like these presented and demanded for the first time after death against a decedent's estate are regarded with great suspicion by the court and with disfavor; and in order to maintain such a claim the evidence must clearly establish a contract, express or implied, between claimants and decedent providing therefor. See *Bell* v. *Oats,* 97 Miss. 78 et seq.

Contract, express or implied, is the basis of these claims. The evidence must clearly establish a contract. That contract must be definite and certain and all its terms agreed upon. See 40 Cy. 1065 and notes; 12 Am.

Dec. 431; 66 A. S. R. 35 and note 39; 60 N. E. 415; 113 A. S. R. 802; A. M. L. Ann. 481; 120 A. S. R. 1038.

A mere statement of intent to give by will does not amount to a contract to do so, even where the benefactor acts upon such expressions to his injury. 40 Cyc. 1065; 77 Atl. 345; 80 Pac. 774; 46 Pac. 181. The contract must be established, if in parol, by testimony of disinterested witnesses clearly and beyond doubt. 40 Cyc. 1065 and notes; *Hamilin* v. *Stevens* (N. Y.), 69 N. E. 118, and notes; *Friders* v. *Krier*, 31 A. L. R. 121, 55 A. R. 222, 71 N. E. 841; *Roscoe* v. *Rousse*, 72 N. E. —.

Even if the contract was made, it was clearly abandoned, as all the proof shows. When he did abandon the contract, if made, certainly the statute began to run at once. His return to Mississippi would not have stopped its running. Section 2463, Hemingway's Code, provides all suits on unwritten contracts, expressed or implied, are barred in three years. *Foot* v. *Farmer*, 71 Miss. 148. Section 2491, Hemingway's Code, provides that the period of limitation shall not be changed by contract.

*Fulton Thompson, R. H. & J. H. Thompson,* also, for appellant.

These cases belong to a class of litigated causes having special peculiarities and require independent thought to properly solve them. Court decisions of other jurisdictions made in such cases are largely unsatisfactory, because of conflicting theories advanced by different courts upon which their decisions have been based. We have found no decision by this court exactly in point, and but one, *Bell* v. *Oates*, 97 Miss. 790, 53 So. 491, having direct application to these cases. There is a Mississippi decision, *Anding* v. *Davis*, 38 Miss. 674, in which the court in its opinion made references to parol contracts to devise lands, but the case was a peculiar one and the court's references to the subject mentioned seem to have been *dicta*.

I. *The rights of the claimant-complainants if they have right. The statute of frauds.* That an oral agreement to devise lands is within the statute of frauds is well settled by authority. See note 5, Am. & Eng. Ann. Cases, page 495, and the authorities there cited.

We see no reason why this is not true of an oral agreement to bequeath personalty of greater value than fifty dollars. An oral agreement to bequeath personalty of greater value than the sum mentioned is likewise within section 4779 of Code of 1906. Where as in these cases the buyers (complainant-claimants) at the time of the making of the alleged contracts did not receive a part of the property to be bequeathed, nor did they pay anything or render services, the pretended consideration for the alleged contracts, contemporaneously with the making of the pretended agreements, one provision of the statute of frauds is as effective as any other of its provisions. It is also established by authority that an agreement to devise land and bequeath personalty is indevisable. *Wallace* v. *Long,* 105 Ind. 522, 55 Am. Rep. 222; *Wood* v. *Evans,* 113 Ill. 186, 55 Am. Rep. 409.

II. *The statute of wills.* The pretended parol contracts sued *upon in these cases violate the statute of wills.* We cannot present our views on this question in any way more satisfactory than to cite *Frieders* v. *Krier,* 180 Wisc. 430, 193 N. W. 77, 31 A. L. R. 118 at 121.

It is illogical to affirm that a parol contract to do that which can only be done in writing is an enforcible agreement. While the law is not always logical and would render injustice in some cases if it were, yet on the subject under discussion it should be logical, because to be so would promote public policy and prevent more injustice than it would deny justice.

If one part of it be within the statute of frauds the entire contract is non-enforcible. *Pond* v. *Sheean,* 132 Ill. 312, 23 N. E. Rep., 1018; *Swash* v. *Sharpstein,* 14 Wash. 426; *Martin* v. *Martin,* 108 Wis. 284, 84 N. W. 439; *Ellis*

v. *Charey,* 74 Wis. 176, 42 N. W. 252; *Hamilton* v. *Thurston,* 93 Md. 218, 48 Atl. 709; *McClanahan* v. *McClanahan,* 77 Wash. 138; Am. Ann. Cas. 1915A 461 and note.

In the cases at bar the burden was on the claimant-complainants to show that the pretended contracts made with them respectively were valid and enforcible ones, by proving the facts making them so, if they were valid and enforcible. This they failed to do.

III. *Complainants abandoned any right they may have had.* The great error committed by the court below was its finding that the evidence established an enforcible contract made by Bloom in his lifetime to pay complainants or any one of them by a devise or bequest for services, board and the like furnished him.

The law applicable to such cases is not the same as governs in cases generally, and the chancellor seemingly failed to comprehend that more is required of a party suing upon such claims as are propounded in these cases than is required in ordinary cases.

IV. *The pretended contracts asserted by claimants-complainants are nonenforcible because vague and indefinite.* 40 Cyc. page 1063. The courts of Pennsylvania seem to have dealt with the questions presented by these cases more than the courts or any other state, and one of its leading decisions, *In re; Weaver's Estate* (1897), 128 Pa. 349, 38 Atl. 12, has met the approval of this court. See *Bell* v. *Oates,* 97 Miss. 790, 53 So. 491.

A mere promise to give a sum of money by way of a legacy cannot be sustained because of services to be rendered the promisor by the promisee because the services, whatever they were, were rendered merely on the expectation of a legacy and the promisee took his chances of its being made. *In re Miller's Estate,* 136 Pa. St. 239, 20 Atl. 796.

*Conclusions from the authorities:*

(1) To be valid an agreement to devise or bequeath property must be to devise or bequeath in a particular way. 40 Cyc. page 1063.

(2) The promisee must accept the terms of the contract. Ib. Page 1064.

(3) The contract or promise must be certain in its terms. Ib.

(4) The promise or contract must not be within the statute of frauds. Ib. And we will add not within the statute of wills. *Frieders* v. *Krier,* 180 Wis. 430, 31 A. L. R. at page 121.

(5) Mere statements, oral or written, of an intent to give property by will to another do not amount to a contract to do so, even when the beneficiary of those intentions and purposes acts upon such declarations to his injury. 40 Cyc. 1065.

(6) The contract must be established clearly by disinterested witnesses. 40 Cyc. 1065.

*Hilton & Hilton,* for appellees.

It was necessary that the claims of appellees be probated as in this case. The Mississippi statute so provides in sections 1774 and 1775, Hemingway's Code, and annotations thereunder. This method was followed in *Bell* v. *Oats,* 97 Miss. 790. Likewise, this procedure was sustained in *Lovizia* v. *Linch,* 76 S. R. 629.

Furthermore, we think that counsel are in error as to the argument that if the promise of deceased had been to have devised to appellees land, that these appellees now would have no right to claim to be a creditor of the estate. And this is likewise true as to the argument as to devising personal properties to them. We understand the proper rule, as applied to the facts in this case, to be "a recovery upon the theory of *quantum meruit.*" *Price* v. *Price,* 34 Am. Dec. 608; *Martin* v. *Wright, Admr.,*

28 Am. Dec. 468 and note; *Jackson* v. *Stearns,* 37 L. R. A. (N. S.) 639; *Goodloe* v. *Goodloe,* 6 L. R. A. (N. S.) 703; *Martha* v. *Donohoo,* 41 L. R. A. (N. S.) 246; *Succession of McNamara,* 18 So. 908.

While in *Bell* v. *Oats,* 97 Miss. 790, our court refused to sustain an allowance made on the testimony of the character of suit here, nevertheless it announced the rule that such a recovery could be had upon evidence clearly establishing a contract, "expressed or implied." See, also, *Loviza* v. *Lynch,* 76 So. 629.

It will be seen from the authorities cited that if this were a suit to enforce specific performance of a contract made upon the part of Bloom to devise to appellees certain real estate or certain other property, we would be confronted by the statute of frauds. Neither would appellees be permitted to recover the amount of the thing promised to be devised by Bloom as a consideration for the services rendered him by appellees. The only remedy and the only one recognized by the courts is to recover from the estate a reasonable value for services rendered him.

We have no quarrel with the authority of *Wallace* v. *Long,* 105 Ind. 522; *Wood* v. *Evans,* 113 Ill. 186, cited by counsel to sustain the proposition that an agreement to devise land and bequeath personally is undevisable. This we admit, and further we admit that a suit for specific performance could not be enforced. But it is not applicable here, because this is a proceeding to recover for services rendered upon a breached contract on the part of Bloom, promisor, to devise to appellees property sufficient to compensate them for their services, and thereby justified appellees in proceeding against the estate upon the rule of *quantum meruit* for services had and received.

Counsel argue that "The pretended contract sued upon in these cases violates the statute of wills." They quote *Frieders* v. *Krier,* 180 Wisc. 430. This case does not apply here. It was for specific performance and so held

that specific performance cannot be required.  It likewise approves the rule that limitations do not begin to run against a claim for services until death.  It quotes with approval *Murtha* v. *Donohoo,* 41 L. R. A. (N. S.) 246. See, too, *Hamilton* v. *Stanton,* 69 N. E. 113.

The rule is laid down in 17 R. C. L., section 165, page 798, that the statute of limitation does not begin to run until the breach of the agreement occurs, which is at decedent's death, for until then no debt is due and no lawful demand can be made, and, therefore, the statute of limitation does not begin to run until that time.  See, also, *Goodloo* v. *Goodloo,* 6 L. R. A. (N. S.) 703; *Davis* v. *Teachout,* 127 Mich. 135, 85 N. W. 475, 86 A. S. R. 531.

If the right of action does not accrue upon the breach of contract of promisor until his death, the statute of limitations does not begin to run until his death.  Next, counsel raise the question that appellees were not creditors of Bloom in his life time, that they rendered this service the same as rendered merely on the expectation of a legacy or devise, and the claimants took their chances of the same being made, and if disappointed, they cannot recover.

In answer to this statement, we first say that this record does not disclose such a state of facts, because all the proof shows that there was an agreement that for the board and keep of the deceased he was to compensate appellees therefor by will.  See 17 R. C. L., page 797 under section 164.

In accordance with this, the general rule prevails that where special services are performed by one person for another during life under a contract or mutual understanding fairly to be inferred from the conduct and declarations and the attending circumstances compensation is to be provided in the will, the contract is then broken, and not only will the action then lie for the recovery of the reasonable value, freed from the operation of the statute, but it could not be maintained before. *Martin* v. *Wright,* 28 Am. Dec. 468; *Price* v. *Price,* 34 Am.

Dec. 608; *Murtha* v. *Donohoo,* 41 L. R. A. (N. S.) 249; *Jilson* v. *Gilbert,* 26 Wis. 637, 7 Am. Rep. 100.

We are in accord with the discussion that cases of this character must be sustained by clear and convincing proof. But likewise, as announced by some courts, as heretofore cited, each case must be tried and controlled by its own facts and circumstances, and unless the proof discloses the situation where good conscience and natural justice requires, nothing should be awarded. *Hamilton* v. *Stanton,* 69 N. E. 118; *Martin* v. *Wright,* 28 Am. Dec. 468.

As to the liability of promisor where the property to be devised was not fixed or the amount stipulated, or where services of promisees were not fixed, see: 6 R. C. L. 588; *Vandusen* v. *Bloom,* 18 Pick. 229, 29 Am. Dec. 582; *Murtha* v. *Donohoo,* 41 L. R. S. (N. S.); *Koch* v. *Hebel,* 32 Mo. App. 103; *Lane* v. *Calby,* 95 App. Div. 11, 88 N. Y. Supp. 465; *Jackson* v. *Stearns,* 37 L. R. A. (N. S.) 639.

We have endeavored by authorities to show that in a suit like the one at bar the statute of limitations did not begin to run until the death of promisor; that the statute of frauds would not intervene and prohibit a promisee from recovering reasonable value for services rendered a promisor who had breached a contract to devise property as compensation for such services, and this to be true whether the amount of property to be devised was specified or not, or whether the value of services had been agreed upon or not; and such a recovery could be had by promisor by a proceeding like the one at bar. In our judgment, from the authorities we have been able to read and those cited herein, we are convinced of the correctness of the two propositions.

Argued orally by *G. Wood Magee* and *R. H. Thompson* for appellant, and *R. T. Hilton,* for appellees.

McGOWEN, J., delivered the opinion of the court.

There are six cases consolidated here involving practically the same facts and the same questions of law.

R. L. Berry, appellee, probated his claims against the estate of Isaac Bloom, deceased, which were allowed by the chancery clerk, said claims aggregating the sum of one thousand four hundred forty-five dollars.

The administrator contested, in writing, the several claims involved, including the claims of R. L. Berry; and said administrator, with Joseph Bloom, the heir at law, who joined with the administrator in contesting the claims here involved, also procured, by their motion, the court to order R. L. Berry *et al.* to file with their claims a petition or other pleading tendering to the administrator an issue and disclosing facts on which they relied for the recovery of claims.

Thereupon R. L. Berry and other holders of like character of probated claims filed a lengthy petition setting up that, on or about the 1st day of May, 1909, at the residence of R. L. Berry, the decedent, Isaac Bloom, proposed to make his home with Berry and other relatives having probated the claims involved here, changing from place to place as he desired, and that, if agreeable to R. L. Berry, he (Bloom) in consideration of Berry providing a home, food, and board generally, including his washing and mending of his clothes and services during his sickness, that he (Bloom) would provide for Berry by will in a sum that would be more than sufficient to compensate Berry for the services thus rendered, and it is alleged that this agreement was accepted by him, and that in 1923 the said Isaac Bloom died intestate, leaving an estate of more than ten thousand dollars in value; that said Bloom did not make a will as he had agreed to do; and that he had, in his lifetime, received from said Berry board, etc., as itemized in the probated account, for which he had not been paid.

Thereupon the administrator filed a demurrer setting up the three-year statute of limitations, the statute of frauds, and that the contract was not to be performed in one year, that the alleged contract was indefinite and void,

and that there was no equity on the face of the declaration. This demurrer was overruled by the chancellor.

Thereupon the administrator filed pleas setting up the statute of limitations, the statute of frauds, and to these Berry filed a demurrer, the effect of which was that the statute of limitations did not apply because the cause of action did not accrue to him until the death of Isaac Bloom in August, 1923, and that the claims had been probated in due time, to-wit, the 12th day of January, 1924, and the letters of administration had been issued in October, 1923; and the court sustained Berry's demurrer and allowed the administrator and heir at law to plead further.

Thereupon the administrator filed three pleas denying the contract, denying the debt, and pleading the three-year statute of limitations, and payment, to which the appellee filed an answer setting up that the statute of limitations did not begin to run until the death of Isaac Bloom in August, 1923, that the claim was probated in time, and that no statute of limitations could be pleaded successfully in bar of his probated claim, and joined issue on the plea of payment.

Many pages of unnecessary testimony are found in the record before us, and practically every thing in the life and habits of decedent, Isaac Bloom, was exhaustively examined into by the administrator in an effort to discover other property which the administrator and heir at law conceived to have been appropriated or concealed by these relatives of Isaac Bloom who probated these claims against his estate, the effect of such testimony being in favor of the establishment of these probated claims as found by the chancellor, only the chancellor reduced the amount of the claims to his idea of a reasonable value for the services rendered by these relatives to decedent.

It will be necessary, in considering the assignments of error presented here, to mention certain facts in connection with certain assignments of error:

First.   The administrator contends that in this character of proceeding the heir at law should have been a party thereto.   Whether this be necessary or not we do not now say, but this record shows that Joseph Bloom, above the age of twenty-one years and only heir of decedent, filed his contest in this cause and took part in this proceeding, so that the heir at law is in court in this proceeding, along with the administrator, contesting these claims.

Second.   The administrator contends that, having filed a declaration, or having probated his claim and afterward filed a declaration, claiming same to be a declaration at law, etc., abandoned his claim thereby.   Unfortunately for the administrator, he procured this declaration to be filed by urging the court to order Berry, the creditor, to make up an issue, and the administrator cannot complain here of the form of the pleadings, because he procured the filing of these unnecessary pleadings in this cause by order of the court, over Berry's objection.

Section 1776, Hemingway's Code (Code of 1906, section 2108), reads as follows:

"The executor or administrator, legatee, heir or any creditor, may contest a claim presented against the estate; and the court or clerk may refer the same to auditors, who shall hear and reduce to writing the evidence on both sides, if any be offered, and report their findings with the evidence to the court, and thereupon the court may allow or disallow the claim; but such proceeding shall not be had without notice to the claimant,"—and is controlling here.   The method of precedure is simple. The creditor having presented his claim for probate, and having had same probated, allowed, and registered by the court, his claim stands as a *bona-fide* charge against the assets of the estate, along with other probated claims, until same shall be contested either by the executor or administrator, or by the legatee, heir, or other creditor; and the claimant in this case, Berry, having had his claim properly probated, allowed, and registered as required

by statute for probated claims, upon filing of the contest by the administrator, or other proper party contesting the claim, it was wholly unnecessary for Berry to present any written pleadings, unless a bill of particulars had been demanded or necessary from the nature of the items of the probated claim.

We think there is no merit in the contention that the pleadings filed by the holder of the probated claim abandoned the claim. It is proper for these claims for services rendered to a decedent to be probated. *Bell* v. *Oates,* 97 Miss. 790, 53 So. 491; *Loviza* v. *Lynch,* 115 Miss. 694, 76 So. 629.

Third. The next assignment of error is that the wife of R. L. Berry, and the other kinsmen of the decedent having like claims, having conferred together before the trial, testified in the case in aid of the establishment of the oral contract, whereby for the services rendered in board, washing, etc., decedent agreed to pay by amply providing for Berry in his will at his death, and also that this character of claims should not be established by interested witnesses. They complain likewise because the administrator called R. L. Berry and examined him as to this contract, and he was cross-examined by his own counsel.

It is obvious that counsel cannot complain of having put an interested party upon the witness stand who was disqualified as a witness by the law and examining him as to his claim, merely upon the ground of his interest. Of course Berry was not a competent witness to establish his own claim against the estate of the decedent; but, the administrator having waived his right to object to the testimony of the witness, Berry being disqualified as well as the other claimants, under section 1577, Hemingway's Code, which declares that a claimant is incompetent as a witness to establish his own claim, those representing the decedent's estate having had said witness sworn and having introduced him as an adverse witness, and having inquired into the identical matter, cannot now complain

because the witness testified to a contract which is against the estate of the decedent merely because he was interested in the result.

Section 1575, Hemingway's Code, renders competent the parties to a lawsuit, and declares that no person shall be incompetent because he has an interest in the result of the suit, and the court is required to give such weight to the evidence of parties at interest as, in view of the situation, the witnesses, and other circumstances, it may be fairly entitled. So the testimony of all these claimants is to the effect that there was a contract as set forth heretofore, and was to be considered by the chancellor along with the other testimony, and the interest of the witnesses in the result of the litigation was a matter to be considered by the chancellor in weighing the testimony, and, while this character of claims is regarded with suspicion, still, there was ample evidence in this record competent, independent of interested witnesses, undisputed and uncontroverted save by argument, to warrant the court in holding that these kinfolks of decedent were entitled to establish the oral contract made with decedent that they had furnished him board, and that therefore he had agreed to pay by willing them an amount ample to repay them for the services rendered.

We are not prepared to say that a suspicion authorized by law of such claims and of the interest of witnesses shall arise to the dignity of repudiation of the claim when established by the rules of evidence and law. We know of no rule of law by which they could not be used as witnesses for each other, if they had not been introduced by the administrator. Of course, each claimant would be denied the right to testify as to his own claim. Section 1576, Hemingway's Code, authorizes the introduction of either husband or wife as witnesses for the other consort in all cases, civil and criminal. We think, therefore, that Mrs. Berry was a competent witness under this statute. We know of no good reason why her testimony should not have been received in this case. She was a

competent witness for her husband, and her testimony, along with the other claimants, and all the other testimony in the case, was competent to establish an oral contract made with decedent by her husband, R. L. Berry.

Fourth. Counsel next contends that the statute of frauds should be interposed to prevent the enforcement of this claim, and cites authorities to the effect that an oral agreement to devise lands by will is within the statute of frauds, and argues that where persons, property, etc., agreed to be bequeathed by one receiving benefits, is greater in value than fifty dollars, that the contract should not be enforced as being within section 4779, Code of 1906, and the authorities cited, have reference, as we view them, to be an attempt to have a specific performance of such a contract, by which rule, which seems to be generally recognized as being correct, it is held where one makes a contract for services presently rendered to be paid for with specific property by will to be made in favor of the party rendering this service or furnishing the thing cannot be specifically enforced, but that recovery may be had as for *quantum meruit;* that the party rendering the services to decedent who breaches the contract by failing to make a will is not entitled to recover the thing contracted for, but is entitled to compensation upon such breach for the actual value of the services rendered to the decedent who breaches the contract.

In the case of *Price* v. *Price,* Chives, Eq. (S. C.) 167, 34 Am. Dec. 608, the court held:

"Son may recover from his father's estate an amount equal to the value of personal services rendered in the lifetime of his parent as overseer upon his plantation, when it appears that there was an understanding that the services were not to be gratuitous, and there was no provision for the son in his father's will."

Another interesting case is *Martin* v. *Wright,* 13 Wend. (N. Y.) 460, 28 Am. Dec. 468, where it is held:

"*Services under Expectation of Legacy.*—When one performs services, for another under a mutual under-

standing that the latter will make compensation therefor by a legacy in his will, such services are not gratuitous and if the recipient of them does not give the expected legacy, an action lies against his representative for their value.''

In the case of *Jackson* v. *Stearns,* 58 Or. 57, 113 P. 30, 37 L. R. A. (N. S.) 639, Ann. Cas. 1913A, 284, we find this rule announced, after declaring that the statute of frauds prohibits the enforcement of a promise to devise real estate for services rendered because it would be in the face of the statute of frauds, but that there is a remedy in such cases:

''The rule seems to be well settled that where, under a contract void by the statute of frauds, services have been performed in consideration of a conveyance of land, and the execution of a deed to the premises is refused, · the agreement can be abandoned by the party rendering · the service, who may recover the value of labor on a *quantum meruit.*''

See, also, *Vickery* v. *Ritchie,* 202 Mass. 247, 88 N. E. 835, 26 L. R. A. (N. S.) 810, and *Ptacek* v. *Pisa,* 231 Ill. 522, 83 N. E. 221, 14 L. R. A. (N. S.) 537, which hold as follows:

''Generally, where services are rendered on an agreement which is void by the statute of frauds, an action will lie on the implied promise to pay for such services; but the promise is implied not from the services alone, but from the benefit to defendant as well, and if defendant has received no benefit, there can be no recovery. 20 Cyc. 300.''

In the case of *Murtha* v. *Donohoo,* 149 Wis. 491, 136 N. W. 158, 159 (41 L. R. A. [N. S.] 246), a claimant had supplied deceased with food and shelter and clothes for a good many years, and deceased had promised to give him the sum of one thousand dollars for what he had done for him, and died without making any provision in his will, and appellant sought to recover the one thousand dollars promised, the court held that the agreement was

valid and binding, but that the measure of damages was the value of the executed consideration for the agreement, not the amount promised by decedent, as alleged, the court saying:

"In a case like the present, where the promise to compensate by legacy is based upon a past or executed consideration, the recovery must be limited to the amount of the demand so to be compensated, or the reasonable value thereof, where the amount is not fixed and definite."

Counsel cites *Frieders* v. *Estate of Frieders,* 180 Wis. 430, 193 N. W. 77, 31 A. L. R. 118, which case announces that the Murtha case above cited is sound in principle, neither violating the statute of wills nor the statute of frauds. In this case Tony Frieders was an employee of his uncle, John Frieders, working in a logging camp, and while in the performance of his duties incident to his employment sustained personal injuries and was carried to a hospital. The evidence tended to show that while in the hospital, his uncle John the deceased, called on him, and told him if he would not make any trouble because of his injury, he (deceased) would leave him enough money in his will so that he would not have to work the rest of his life. His uncle breached this contract and died intestate. An action was brought against the estate to recover for the breached agreement made by the uncle to provide in his will for Tony so that he would not be required to work during the rest of his lifetime; fifty thousand dollars was demanded. The jury returned the following special verdict:

"(1) What sum will compensate Tony Frieders for the injuries he received February 17, 1914? A. Four thousand dollars.

"(2) What sum will compensate Tony Frieders for the failure of John Frieders to keep his agreement to provide for Tony Frieders in his will? A. Thirty-eight thousand dollars."—and upon this judgment was rendered for thirty thousand dollars by the court below. The court held that because of the statute of frauds and

the statute of wills Tony could not recover the thirty thousand dollars, because it would be tantamount to the enforcement of a naked promise to make a bequest, and called attention to the solemnity of the manner in which a will was executed, to the field of fraud that would be opened up, but announced, in this language, its adherence to the rule above quoted in the Murtha case:

"The rule of the Murtha case responds to every call of justice. It recognizes the validity of the contract; it postpones the running of the statute of limitations until the death of the testator; it allows as damages for the breach the full value of the services rendered or any other consideration passing from the claimant to the testator upon which the original claim rests. To allow more is to enforce a promised legacy, which should be recognized only when created in the manner required by statute. . . . We regard the rule of the Murtha case as sound in policy, consistent with the spirit and purpose of the statute regulating the execution of wills, one which yields to the claimant full compensation for any claim he may have against the deceased, resulting in injustice to no one. . . . Most of the cases there cited have been examined and no case has been found where the measure of damages for the breach of an agreement to compensate for an existing liability has been held to be anything but the value of the original claim. It necessarily follows that the judgment for thirty thousand dollars cannot be sustained."

The majority of the court concurred in this opinion, but held that the amount to which claimant was entitled was the amount to which he would have been entitled under the Workmen's Compensation Act for the injuries he sustained.

The authorities cited by counsel for appellant do not sustain his contention, but rather strongly reinforce the rule adopted by the lower court that a claimant rendering service to decedent in his lifetime on his promise that he would amply repay him in his will may recover the

value of the services so rendered to decedent, and where such agreement is made, the authorities cited, and many others—in fact, the great weight of the authorities—are to the effect that the statute of frauds does not apply because in his lifetime decedent received certain benefits, and that the statute of wills does not apply for the same reason.

Fifth.   The statute of limitations does not apply to a suit for damages for a breach of a contract, because the cause of action does not accrue to claimant until breach of the contract, which is certainly not ascertained until the death of the intestate.

"When compensation for services is not to be made until a certain date or the happening of a certain event, full compensation may be recovered by law for all services performed prior to that date, as the statute of limitations does not begin to run until the time so fixed. In accordance with this principle, the general rule prevails that where personal services are performed by one person for another during life under a contract of mutual understanding, fairly to be inferred from their conduct and declarations, and the attending circumstances, that compensation therefor is to be provided in the will of the party receiving the benefit of them, and the latter dies intestate, or fails to make such provision, the subsisting contract is then broken, and not only will the action then lie for the recovery of their reasonable value, freed from the operation of the statute, but it could not be maintained before.   So the cause of action for breach of contract to devise land in consideration of services rendered, arises upon breach, and recovery may be had for the value of all the services, although part were rendered beyond the statutory limitation period prior to the breach.   The reason for this doctrine is placed upon the ground that no breach of the agreement occurs until the decedent's death, for until then no debt is due, and no lawful demand can be made, and therefore the statute of limitations does not begin to run until the decedent's

death, for until then no debt is due, and no lawful de-
mand can be made, and therefore the statute of limita-
tions does not begin to run until that time. Thus neglect
to sue until after the death of a parent by a son who had
rendered certain services in the lifetime of the former,
in expectation that provision would be made for him in
the parent's will, by way of reward, it being understood
that his services were not to be gratuitous but that the
testator would make compensation therefore at his death,
is not such neglect as will bring the demand within the
statute of limitations, so as to bar an action for its re-
covery, as in such a case, a right did not accrue until
the testator's death. But where the contract is broken
by the refusal of the promisor during his lifetime to re-
ceive the services, the statute of limitations begins to run
at the date of the breach, as the right of action accrues
at that time.'' 17 R. C. L. p. 799.

To put it plainly, the recovery to be had by the claim-
ant is not the value of the devise or bequest promised,
but the value of the services rendered to the promisor,
and in this case, the promise only was that he should be
amply paid, which could reasonably be interpreted to
mean that by testator's will claimant would be provided
fair payment for the services rendered by him.

In this case, it is shown that Bloom had been divorced
from his wife; that his son, according to his idea, had
aligned himself with his mother, the wife of Bloom, de-
cedent, and he had made settlement with his wife and
with his son; that he had executed an annuity agreement
with his friend, Cohn, by which he (Bloom) received a
certain income during his life, and the principal, ten thou-
sand dollars would become the property of Cohn at his
death.

These people were kin of blood to him, but under no
duty morally to furnish him board and other services
in connection. They furnished him board, etc., upon this
contract. He lived a long time, from 1909, when the
agreement was made, until 1923. They took the chance

of his making bad investments and losing his estate, which was certainly less than ten thousand dollars.

So that we do not see that it can be fairly said that to permit recovery for board and washing and services rendered to this decedent in his lifetime, upon his promise to pay for same in his will, would be immoral, nor do we see any danger of opening the floodgates of fraud, where recovery is limited to the value of the services to decedent. If he received nothing of value from claimants, there can be no recovery, no matter what the promise was that the will should contain.

Upon the whole case, we are of opinion that there was ample proof to sustain the chancellor's finding in the allowance of the claims for board, etc., furnished decedent. The evidence offered of the contract heretofore quoted was ample to sustain the chancellor's finding that there was such a contract.

Adhering strictly to the rule announced in *Bell* v. *Oates,* 97 Miss. 790, 53 So. 491, where Judge ANDERSON, speaking for the court said, ''Claims of the character of the one here involved, brought up for the first time after the death of the decedent, are looked upon by the courts with disfavor; and in order to maintain such a claim, the evidence must clearly establish a contract, express or implied, between the claimant and decedent, providing therefor. *In re Weaver,* 182 Pa. 349, 38 A. 12''— we must bear in mind that all of the proof offered tended to show that this man boarded in the homes of these relatives; that he asked Berry to assent to his proposition; that, for such board, instead of paying cash, he wished the payment to be postponed until after his death; that he told disinterested witnesses that he had so arranged. He was shown to be an honest man, and, while the plea of payment was interposed, there was no proof of any payment. The law does not require the courts to impose an unreasonable and unjust suspicion upon such contracts.

We think upon the facts in the case that the chancellor was warranted in holding the estate liable for the value

145 Miss.—43.

of the services rendered the decedent, the relatives so rendering this service not being under any legal or moral obligation to render such service to him.

We think further that the statute of limitations cannot be pleaded in bar of any such claim, because the right of action does not accrue until after the death of the promisor, who agrees to pay for such services in his will and breaches it by dying intestate.

We next say that the statute of frauds and the statute of wills may not be interposed in bar of the claim for the value of the services which were actually rendered which were beneficial to decedent, and those so rendering the services not being under any legal or moral obligation to support decedent.

We next say that one who puts a witness, disqualified by law, upon the witness stand, and examines him as a witness touching the matter of his claim, may not complain that such testimony is incompetent because the witness is interested. The estate waives the disqualification of such witness by having him sworn and examining him as to the matter of his claim, and as to his interest in the subject-matter. The statute distinctly provides that parties shall be competent as witnesses in all cases.

We next say that the presentation of a probated claim and the contest thereon is a matter of probate business administered by the chancery court, and the only pleadings required by statute are the validly probated claim and the contest thereof, with reasons therefor, filed by one or all of the parties authorized so to do under our statute.

In a proceeding of this character, the wife is a competent witness for her husband who is propounding a claim against the estate of a decedent for board, etc., furnished by him to the decedent in his lifetime.

There may be other minor points raised by counsel for appellant which we have not adverted to here, because they appear to be without merit.

The decree of the court below is, in all respects, affirmed.

*Affirmed.*