Kline, Executrix, Etc. *v.* Pearl

No. 41046 March 9, 1959 109 So. 2d 556

*C. Delbert Hosemann, Brunini, Everett, Grantham &
Quin,* Vicksburg, for appellant.

*K. Hayes Callicutt, Satterfield, Shell, Williams & Buford,* Jackson, for appellee.

GILLESPIE, J.

Henry Kline and Bernard Pearl were partners operating under the name of Kline and Pearl. They owned and operated a plantation known as Onward Plantation and two buildings in Vicksburg. Henry Kline operated Kline's Anguilla Store. Kline had other businesses in which Pearl had no interest. The funds for all these businesses were handled in one bank account known as "Kline's Anguilla Store." Separate books were kept on each of the several businesses whose funds were kept in this common bank account. In 1930, Henry Kline borrowed $80,000 from the First National Bank and Trust Company of Vicksburg. Pearl accommodated Kline by executing with the latter a deed of trust on the common

property of the partners in Vicksburg. This loan was to Kline individually and Pearl had no interest in the matter other than accommodating Kline. In 1934, 1935 and 1936, there was paid from the partnership funds of Kline and Pearl the sum of $12,800 interest on said $80,000 loan. This payment of interest was entered on the partnership books of Kline and Pearl as an expense of that partnership, so that it reduced the personal account of Pearl by $6,400. This was shown later to have been a bookkeeping error. This error was never corrected. The error appeared to have been discovered by Pearl's wife about 1943.

On February 6, 1947, Pearl filed suit against Henry Kline for the sum of $84,963.60 for matters other than the $12,800 interest mentioned above. The suit was based largely on matters arising out of a former guardianship matter wherein Kline was guardian for Pearl. On March 6, 1947, Kline filed his answer in said suit and in his answer he stated that it had been definitely determined that $12,800 had been taken from the partnership account of Kline and Pearl to pay interest due by Kline individually, and that the sum of $6,400, or one-half thereof, would be credited to Pearl and paid over to him on request. This constituted a deliberate acknowledgment by Kline that he owed Pearl $6,400, and was made after Kline had caused the auditors to determine the facts. The suit was settled as to the demand for $84,963.60, and the cause dismissed on January 9, 1948. On January 6, 1948, Pearl and his wife executed a release to Kline but specifically excepted from the operation of the release the interest item of $6,400, and another item of $5,400 later to be mentioned. That suit did not seek to recover either of the last mentioned items.

The said sum of $6,400 was not paid by Kline and no entry was ever made correcting the erroneous bookkeeping entry which resulted in Pearl paying that sum of money to discharge Kline's personal debt. Kline died

June 18, 1953, and the partnership of Kline and Pearl terminated. The assets were distributed as hereinafter stated. A new partnership, or joint venture, was immediately formed for the purpose of completing the crop then growing on Onward Plantation, and this venture between Pearl and Henry Kline's devisees was terminated on March 31, 1954, when the assets of that venture were divided between the partners.

Within the time allowed by statute, Pearl probated his claim against the estate of Henry Kline, deceased, for $11,800, said sum being made up of the $6,400 interest item already mentioned and a claim that Henry Kline improperly charged the partnership with a manager's fee for the years 1944 through 1952, totaling $10,800, one-half of which, or $5,400, Pearl claims Kline's estate owes. On the hearing of the contest of Kline's executrix, the chancellor allowed the $6,400 interest item and disallowed the $5,400 item. Kline's estate appeals from that part of the decree allowing the $6,400 item, and Pearl cross-appeals from that part of the decree disallowing the $5,400 item of the probated claim.

Kline's estate first contends that its demurrer to the probated claim should have been sustained. The $6,400 item was not itemized as contemplated by the statute, but the $5,400 item was sufficiently stated. The demurrer was of necessity directed to the claim as a whole. No motion for a bill of particulars was made. Cf. Ellis v. Berry, 145 Miss. 652, 110 So. 211. We find no error in the overruling of the demurrer.

Kline's estate next contends that since the partnership of Kline and Pearl had sufficient assets after paying all indebtedness to discharge any indebtedness due Pearl, and that Pearl could not make claim against Kline's Estate until after final termination of the partnership and a final accounting is had, which was not done in this case until March 31, 1954. Assuming the correctness of this contention as to the balance due the

surviving partner when a final accounting is made as to the partnership affairs, the contention of Kline's Estate is not tenable because the $6,400 item was an indebtedness Kline personally owed Pearl. Its connection with the partnership of Kline and Pearl was incidental in that the partnership was the source of the funds that paid Kline's personal debt, and through error in bookkeeping Pearl's account was reduced. The result of this error, however, was that Kline became personally indebted to Pearl. The resulting indebtedness was a personal and individual matter between Kline and Pearl. The indebtedness did not arise out of the operation of the partnership e x c e p t incidentally. The chancellor found, and correctly so, that the $6,400 interest item was a personal obligation of Henry Kline.

██ █ Appellant's next contention is that if the obligation for the $6,400 item was a personal obligation of Kline, it was barred by the statute of limitations. The statement in Kline's answer filed March 6, 1946, was, as already stated, a deliberate acknowledgment of the indebtedness. The authorities generally agree that in a proper case, an acknowledgment or new promise sufficient to remove the bar of the statute of limitations may be made in pleadings; that an admission of a debt in a judicial proceeding may constitute an acknowledgment of the debt so as to take it out of the operation of the statute of limitations. 34 Am. Jur., Limitations of Actions, Sec. 318; 54 C. J. S., Limitations of Actions, Sec. 314 (g). The only remaining question is whether the six-year statute of limitations began to run on the date of filing the answer containing the new acknowledgment, which was March 6, 1946, or the date of the settlement and dismissal of that suit on January 6, 1948. If it began to run on the first date the claim was barred; if the later date, it was not barred.

The acknowledgment contained in Kline's answer was a continuing one so long as the suit in which the answer

was filed was a pending case. ██ ██ We hold that the six-year statute began to run when that suit was dismissed, and that the statute began to run on January 6, 1948. This was within six years from the date of Kline's death and the probating of the claim in Kline's estate.

There are other contentions made by appellant, but after due consideration we do not consider them of sufficient merit to justify discussion.

 On cross-appeal, Pearl seeks the reversal of the order of the chancellor disallowing the item in the probated claim of $5,400 based on the claim that Kline improperly charged the partnership with a manager's fee from 1944 to 1952.

The records shows that Pearl and Kline had been disputing about Kline charging a manager's fee for some years before Kline's death. The record does not show what was done in the administration of Kline's estate with reference to the partnership assets of Kline and Pearl. It is inferable that neither the executor of Kline's estate nor Pearl proceeded in accordance with Section 554, et seq., Code of 1942. It appears that shortly after Kline's death the devisees of Kline and Pearl closed the partnership business as of the date of Kline's death and caused the firm's auditor to enter closing entries in the partnership books. This was done by balancing the books at the time of Kline's death and showing the part that belonged to Pearl and that portion belonging to Kline. The books, admittedly correct, showed at the top of the page where these entries were made the following: "Adjustments to effect closing and distribution upon termination of old partnership on 6/18/53." June 18, 1953 was the date of Kline's death. The auditor also made appropriate entries to open a new partnership, or joint venture, beginning June 18, 1953, between Kline's devisees and Pearl. This new venture was formed in order to complete the crop year 1953. There appears at

the top of the page where these entries were made the following: "Opening entry—New Partnership, June 19, 1953." This new venture was closed out and all property and funds divided during 1954. About the same time the real property known as Onward Plantation was divided by mutual agreement. There was ample cash to take care of the $5,400 claim in the partnership at all times prior to division. At no time did Pearl assert claim to the $5,400 here involved in connection with the closing of the old partnership or the new joint venture. Pearl made no contention that the closing entries, referred to above, were incorrect.

Thus it appears that the books of the partnership were balanced and Pearl received in cash and property what he was entitled to according to the books. There was no balance in his favor. He had every opportunity to assert his claim to the $5,400 in winding up the partnership affairs. He failed to do so. Under these circumstances, he should not be permitted to make claim against the estate of the deceased partner. Cf. Fowler v. Harrell, 226 Miss. 441, 84 So. 2d 524; 40 Am. Jur., Partnership, Sec. 317, p. 352; 68 C. J. S., Partnership, Sec. 318, p. 831.

Affirmed on direct appeal and cross-appeal.

*McGehee, C. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.